UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
ALPHONSE PECOU,

        Plaintiff,

        -against-

FORENSIC COMMITTEE PERSONNEL,
OFFICE OF HEALTH INFORMATION,
DR. ALICIA P. FALCON,
EXECUTIVE DIRECTOR DR. KATHLEEN IVERSON,
and COMMISSIONER OF MENTAL HEALTH,

        Defendants.
----------------------------------------X

**OPINION AND ORDER**
06-CV-3714 (SJF)

FEUERSTEIN, J.

I.    Introduction

On July 18, 2006, *pro se* plaintiff Alphonse Pecou ("Plaintiff") commenced this action pursuant to 42 U.S.C. § 1983, in the United States District Court for the Southern District of New York ("S.D.N.Y."). The case was transferred to this Court on July 25, 2006. Plaintiff's financial status qualifies him to commence this action without prepayment of the filing fees. See 28 U.S.C. § 1915(a)(1). Therefore, Plaintiff's request to proceed *in forma pauperis* is granted. For the reasons set forth below, the complaint is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief may be granted.

II.    Background

Plaintiff brings this lawsuit seeking to amend his mental health records, which he alleges contain misrepresentations and errors that have affected his liberty interests. He has attached to his complaint what appear to be partial copies of records, with contested portions checked or

psychiatric history, including lengthy periods of involuntary commitment to mental health facilities, including his current commitment at Creedmore Psychiatric Center in Queens Village, New York.

Plaintiff alleges that he received copies of his mental health files on April 19, 2006, and discovered "crucial misrepresentations fabrications," (Complaint at 4.), that he wrote to the Office of Health Information Management, Executive Director Kathleen Iverson, the Office of Mental Health and Forensic Committee, and Dr. Falcon, but that he did not receive any response, and that "that the notice on the wards by the Office of Health Management states that the correct procedure is to write the Office of health management concerning personnell files but furthertively states they do not have to amend anything" [sic]. (Complaint at 5.)

Plaintiff argues that "this is a direct violation of due process where there is no criteria on how the process works for amending or what the patient must submit for amending records to occur." Id. He claims that these "false allegations have been placed before the court for years without his acknowledgement and the damage has affected his liberty intrest by causing him to be retained by Mental Health Court" [sic]. Id. Plaintiff also alleges that defendants have violated the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, New York's Mental Hygiene law, the Americans with Disabilities Act, and "H.I.P.A.," which the Court understands to refer to the Health Insurance Portability and Accountability Act of 1996, Pub. L. 104-191, 110 Stat. 1936 ("HIPAA").

Plaintiff seeks ten million dollars ($10,000,000) in monetary relief, injunctive relief, and declaratory relief. (Complaint at 7.)

III. Discussion

A. Standard of Review

Title 28, Section 1915(e)(2)(B) of the United States Code requires a district court to dismiss a case if the court determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). A *pro se* plaintiff's submissions are held "'to less stringent standards than formal pleadings drafted by lawyers . . . .'" Hughes v. Rowe, 449 U.S. 5, 9 (1980) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)). Indeed, a court must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Burgos v. Hopkins, 14 F.3d 878, 790 (2d Cir. 1994)). Nonetheless, a *pro se* plaintiff is not exempt from compliance with relevant rules of procedural and substantive law. Faretta v. California, 422 U.S. 806, 834 n. 36 (1975).

Plaintiff alleges that Defendants' actions violated his civil rights which is cognizable under 42 U.S.C. § 1983. In order to maintain a § 1983 action, a plaintiff must allege two (2) essential elements. First, "the conduct complained of must have been committed by a person acting under color of state law." Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994) (citing Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327 (1986)). Second, "the conduct complained of must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." Id. "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993) (citing City of Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985)).

3

B.  Right to Amend Mental Health Records

Plaintiff challenges the accuracy of his mental health records and also argues that the Office of Health Management's posted notice regarding records violates his right to due process, because it does not establish criteria for amending incorrect records. HIPAA establishes standards for the protection of individual health information, and authorizes the Secretary for Health and Human Services to establish regulations to protect the privacy and accuracy of individually identifiable health information. 42 U.S.C. §§ 1320d - 1320d-8. The HIPAA regulations provide a process by which individuals may request amendments to the contents of their records, require that the covered entity respond to the request within sixty (60) days, and establish implementation specifications for accepting or denying the requested amendment. 45 C.F.R. § 164.526(b)-(d).

New York's Mental Hygiene Law is less protective of individual rights. Although § 33.16(g) provides that an individual may challenge the accuracy of materials contained in his records by providing a brief written statement, which is then included in the record, the state law does not require the health care provider to correct the record. NY MENT HYG L § 33.16(g). HIPAA specifically preempts contrary state law unless the provision falls under one of the enumerated exceptions not at issue here. See Nat'l Abortion Fed'n v. Ashcroft, No. 03 Civ. 8695, 2004 WL 555701, at *3 (S.D.N.Y. March 19, 2004); 45 C.F.R. § 160.203; 42 U.S.C. § 1320d-7. Accordingly, the mental health facility is bound by the more stringent federal law.

Plaintiff indicates that he wrote to the Office of Health Management and to Defendants Falcon and Iverson regarding the accuracy of his records, but received no response. From the limited allegations in the complaint it cannot be determined whether Defendants have complied

4

with the HIPAA regulations. However, even if Defendants failed to comply with the statutory regulations, "the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." Touche Ross & Co. v. Redington, 442 U.S. 560, 568 (1979) (quoting Cannon v. University of Chicago, 441 U.S. 677, 688 (1979)). Congress did not intend to create a private right of action through which individuals can enforce HIPAA's provisions. See e.g. Barnes v. Glennon, No. 05-CV-0153, 2006 WL 2811821, at *5 (N.D.N.Y. Sep. 28, 2006) ("No where does this statute, either explicitly or implicitly, confer to private individuals a right of enforcement."); University of Colorado Hosp. Auth. v. Denver Publ'g Co., 340 F. Supp. 2d 1142, 1144 (D. Colo. 2004) (finding no evidence that Congress intended to create a private right of action under HIPAA). Instead, the HIPAA statute sets forth monetary and criminal penalties to be assessed against individuals who violate these provisions, 42 U.S.C. § 1320d-6(a)(2) & (3), by the State or to the Secretary of Health and Human Services. Therefore, Plaintiff cannot sustain a claim for relief under HIPAA. Only the State of New York or the Secretary of Health and Human Services can bring a cause of action for a violation of HIPAA by any of the Defendants.

Nor can Plaintiff sustain his due process claim. "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). Plaintiff has not alleged that the posted amendment procedures deprive him of one of these interests.

C.  Involuntary Hospitalization

Plaintiff also claims that the alleged factual inaccuracies contained in his records may

5

affect his future involuntary retention in mental health institutions. This allegation fails to state a claim under the Fourth Amendment prohibition against unreasonable search and seizure or the right to due process under the Fourteenth Amendment.

"An involuntary civil commitment is a 'massive curtailment of liberty,' and therefore cannot permissibly be accomplished without due process of law." Rodriguez v. City of New York, 72 F.3d 1051, 1061 (2d Cir. 1995) (quoting Vitek v. Jones, 445 U.S. 480, 491 (1980)). Involuntary commitment is constitutional, however, if the person is both mentally ill and a danger to himself or others. Rodriguez, 72 F.3d at 1061. See also O'Connor v. Donaldson, 422 U.S. 563, 580 (1975). The New York statutory scheme for civil commitment has been found to satisfy these constitutional requirements. Project Release v. Prevost, 722 F.2d 960, 971-74 (2d Cir. 1983) (holding that due process is afforded by numerous and elaborate provisions for notice and hearing, periodic reassessment of patient's status and provision for appointment of counsel); NY MENT HYG L, Article 9, Hospitalization of the Mentally Ill.

Plaintiff does not state the basis of his current commitment nor challenge the commitment process. There is no indication that the removal of the contested portions of his records, in an overall record that contains numerous references to other violent or threatening behavior, might change the outcome of a reviewing committee's finding that Plaintiff was or was not an appropriate candidate for release from civil commitment. Plaintiff's conclusory and hypothetical allegation regarding future commitment decisions fails to state a claim for relief under § 1983.

Nor has Plaintiff shown that his commitment violates the Fourth Amendment right against unreasonable search and seizure. There is no Fourth Amendment violation for involuntary hospitalization, "if there are reasonable grounds for believing that the person seized

6

is subject to seizure under the governing legal standard." Glass v. Mayas, 984 F.2d 55, 58 (2d Cir. 1993) (quoting Villanova v. Abrams, 972 F.2d 792, 795 (7th Cir. 1992)). Plaintiff has not alleged that the defendants failed to satisfy the requirements of the governing standard and thus has not stated a claim under § 1983.

Plaintiff also argues that his continued involuntary hospitalization violates his rights under the Fifth and Sixth Amendments and the Americans with Disabilities Act. Plaintiff has offered no facts or arguments that would support these claims.

IV. Conclusion

Plaintiff's request to proceed *in forma pauperis* is granted and Plaintiff's complaint is dismissed with prejudice, *sua sponte*, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The Clerk of Court is directed to close this case. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

IT IS SO ORDERED.

_____
Sandra J. Feuerstein
United States District Judge


Dated: January 5th, 2007
      Brooklyn, New York

Copy to:

Alphonse Pecou
80-45 Winchester Blvd.
Queens Village, NY 11427