FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★ MAY 14 2010
P.M.
TIME A.M.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

ALPHONSE PECOU,

                Plaintiff,

-against-

FORENSIC COMMITTEE PERSONNEL,
PERSONNELL OFFICE OF HEALTH
INFORMATION, DR. ALICIA P. FALCON, MD,
DR. KATHLEEN IVERSON, MD and
COMMISSIONER OF MENTAL HEALTH,

                Defendants.

-----------------------------------------------------------X

**REPORT & RECOMMENDATION**
**06 CV 3714 (SJF)(LB)**

**BLOOM, United States Magistrate Judge:**

    Plaintiff, Alphonse Pecou, brings this pro se action under 42 U.S.C. §1983, alleging that defendants Forensic Committee Personnel, Personnel Office of Health Information, Dr. Alicia P. Falcon, MD, Dr. Kathleen Iverson, MD and the Commissioner of Mental Health (collectively referred to herein as "defendants"), violated his rights under the Fourth, Fifth, Eighth, Sixth and Fourteenth Amendments of the United States Constitution. Plaintiff also raises claims under 42 U.S.C. §§1985, 1986, Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971) ("Bivens"), the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, *et seq.* ("ADA"), the Health Insurance Portability & Accountability Act, 42 U.S.C. §§1320, *et seq.* ("HIPAA") as well as numerous state law claims. Defendants move to dismiss plaintiff's Amended Complaint Pursuant to Remand pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The Honorable Sandra J. Feuerstein referred defendants' motion to me for a Report

and Recommendation in accordance with 28 U.S.C §626(b). It is respectfully recommended that defendants' motion should be granted.

## BACKGROUND

In 1980 plaintiff was arrested for homicide in the second degree and plead not responsible by reason of mental disease or defect pursuant to New York Criminal Procedure Law ("CPL") §330.20 in the New York State Supreme Court, Queens County. (Amended Complaint Pursuant to Remand, "Am. Compl." at 6, 14.)[1] In October 1988, plaintiff was conditionally released into the community but was recommitted in September 1989 for "alleged" violations of CPL §330.20. (Id. at 6, 13.) In April 2000, plaintiff was transferred to Creedmoor Psychiatric Center, where he is currently committed. (Id. at 4, 5, 13.)

In April of 2006, plaintiff alleges he received his mental health records from a Mental Health Legal Services' ("MHLS") attorney, which contained "crucial misrepresentations." (Id. at 4.)[2] Plaintiff states these "fabrications" were "maliciously" placed in his record by Dr. Falcon "in callous disregard for the truth." (Id.) Plaintiff alleges that he wrote to the Office of Health Information Management, Executive Director Kathleen Iverson, the Office of Mental Health and Forensic Committee and Dr. Falcon, and attaches to his complaint a letter dated May 2, 2006 addressed to these parties. (Id. at 4, 5, 10, 11.) Plaintiff's letter states that he

---

[1] Pursuant to CPL §330.20(2), "upon the acceptance of a plea of not responsible by reason of mental disease or defect, the court must immediately issue an examination order" and "[t]he clerk of the court must promptly forward a copy of the examination order to the mental hygiene legal service and such service may thereafter participate in all subsequent proceedings under this section."

[2] At least thirty (30) days prior to the expiration of the retention order, the state commissioner of mental health must apply for a subsequent retention order and must give written notice of the application to the district attorney, defendant, counsel for the defendant and MHLS. CPL §330.20(9).

2

> understands there is violence on his record which he is sincerely sorry for the events unfortunately [Pecou] is forced to take action because there are complete fabrications as well misrepresentations in his files which may have baring [sic] on future retention issues . . . Please correct or remove from the files the following, which may have been in files for years since before 2003.

(Id. at 10, 11.) Plaintiff alleges that he did not receive a response to his letter. (Id. at 4.) In addition, plaintiff states "that the notice on the wards by the Office of Health Management states that the correct procedure is to write the Office of health management concerning personnell [sic] files but furthertively [sic] states they do not have to amend anything." (Id. at 5.)

Plaintiff argues that "this is a direct violation of due process where there is [sic] no criteria on how the process works for amending or what the patient must submit for amending records to occur." (Id.) Plaintiff states there is a "Policy of Failure to inspect records monthly . . . every six months or even yearly for innacuricies [sic]." (Id. at 8.) Plaintiff further asserts that these "false allegations have been placed before the court for years without his acknowledgement and the damage has affected his liberty interest by causing him to be retained by Mental Health Court." (Id. at 5.) Plaintiff states that he appeared before the New York State Supreme Court, Queens County, presided over by the Honorable William Earlbaum, for six retention hearings between January and November of 2006. (Id.) Plaintiff asserts that the "allegations complained of were placed before the Hon. Earlbaum as true by State Attorney and Hospital staff as true, Forensic Doctor Angela Algertey and caused considerable consideration enough to stop releasal [sic]." (Id.) Moreover, plaintiff asserts, "the evidence utilized by court gave erroneous instructions as to standard of proof which must be used to retain plaintiff in psych ward." (Id.) Plaintiff further asserts that Mental Health Legal Services "refused to appeal or dropped appeal." (Id.)

3

## PROCEDURAL HISTORY

On May 24, 2006, plaintiff commenced this pro se action in the United States District Court, Southern District of New York. (Compl.; Document 2.) The case was transferred to this Court on July 18, 2006. (Transfer Order; Document 3.) On January 5, 2007, the Court dismissed plaintiff's Complaint for failure to state a claim upon which relief may be granted, however, the Order was not entered until May 21, 2007. (Document 7.) Judgment was entered on May 22, 2007. (Document 8.) On June 18, 2007, the Court granted plaintiff's motion for reconsideration and provided plaintiff with the opportunity to file an amended complaint. (Document 9.) Plaintiff filed his Amended Complaint on July 16, 2007, however, the Court dismissed plaintiff's Amended Complaint on October 25, 2007 as it failed to cure the defects in plaintiff's initial Complaint. (Documents 10, 13.)

On August 12, 2008, the Court of Appeals for the Second Circuit ("Court of Appeals") vacated and remanded the Court's May 21, 2007 Order dismissing plaintiff's initial Complaint without leave to amend. (Mandate; Document 15.) In its Mandate, the Court stated that plaintiff filed a timely notice of appeal on June 6, 2007, which "ousted the district court of jurisdiction" to issue the June 18, 2007 and October 25, 2007 Orders or to hold further proceedings. (Id.)[3] Plaintiff filed an Amended Complaint Pursuant to Remand, on December 1, 2008, seeking ten (10) million dollars in monetary relief, injunctive relief, and declaratory relief. (Am. Compl. at

---

[3] Plaintiff states "[i]t is also clear that the App[ellate] Court [] [r]emanded the case back on the calendar of the District Court. Therefore, the Declaration of Jane R. Goldberg in Support of Motion to Dismiss[] is n[u]ll and void in all due respect[s]." (Pl.'s First Letter at 1-2; Document 46.) The Court of Appeals vacated and remanded the Court's May 21, 2007 Order because it failed to provide plaintiff the opportunity to amend his pleading. However, plaintiff was directed to amend the complaint to cure the deficiencies as cited by the Court's May 21, 2007 Order. Therefore, any reference to the Court's analysis in the May 21, 2007 Order by defendants does not make defendants' instant motion "null and void."

8.) Defendants now move to dismiss plaintiff's Amended Complaint Pursuant to Remand and plaintiff opposes the motion.[4]

## DISCUSSION

### I. Standards of Review

The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under Rule 12(b)(6) for failure to state a claim are "substantively identical." Lerner v. Fleet Bank, N.A., 318 F.3d 113, 128 (2d Cir. 2003). On a motion to dismiss under 12(b)(1), however, the party invoking the court's jurisdiction bears the burden of proof to show that subject matter jurisdiction exists, while the movant bears the burden of proof on a motion to dismiss under Rule 12(b)(6). Id. A court, reviewing a motion to dismiss must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (citing Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508, n. 1 (2002)); Koppel v. 4987 Corp., 167 F.3d 125, 130 (2d Cir. 1999). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). To survive a motion to dismiss, plaintiff must do more than allege facts that are "merely consistent with a defendant's liability," Iqbal, 129 S. Ct. at 1949, or "speculative," Twombly, 550 U.S. at 555, he must allege facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 556)). If a plaintiff does not "nudge [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." Twombly, 550 U.S. at 569. Nonetheless, "[a] document filed pro se is 'to be liberally construed,' and 'a pro se

---

[4] Plaintiff filed three separate letters in opposition. (Documents 46, 47, 48.)

complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)); see also Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007) ("We liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions 'to raise the strongest arguments they suggest.'") (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)) (other citations omitted).

Furthermore, "[a] court presented with a motion to dismiss under both Rule 12(b)(1) and 12(b)(6) must decide the jurisdictional question first," Amidax Trading Group v. S.W.I.F.T. SCRL, 607 F.Supp.2d 500, 503 (S.D.N.Y. 2009) (citing Adamu v. Pfizer, Inc., 399 F.Supp.2d 495, 500 (S.D.N.Y. 2005) (internal quotation omitted), "because dismissal under Rule 12(b)(6), i.e., for failure to state a claim, is an adjudication on the merits with preclusive effect," id. (citing Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 88 n. 6 (2d Cir. 2006)); see also Wynn v. AC Rochester, 273 F.3d 153, 157 (2d Cir. 2001) (the Court must first decide that it has subject matter jurisdiction before adjudicating any matter in the case). In considering a motion to dismiss, the Court may consider documents attached to the pleadings or documents incorporated by reference therein. Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001).

## II. The Rooker-Feldman Doctrine

Defendants argue that plaintiff's Amended Complaint Pursuant to Remand should be dismissed under the doctrine of Rooker-Feldman. (Mem. of Law in Support of Defs.' Motion to Dismiss Pl.'s Am. Compl. "Defs.' Mem." at 7.) Defendants state that "although framed as a

§1983 action, plaintiff seeks reversal of a prior state court order" and "the district court cannot find merit to his claims without finding that the state court erred." (Id. at 8.)

The Rooker-Feldman doctrine prohibits the lower federal courts from reviewing final judgments of state courts. District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482-83 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 414-16 (1923). However, the Supreme Court has cautioned that the doctrine was meant to occupy "narrow ground." Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 284 (2005). Therefore, four requirements must be met for Rooker-Feldman to apply: "First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain of injuries caused by a state-court judgment. Third, the plaintiff must invite district court review and rejection of that judgment. Fourth, the state-court judgment must have been rendered before the district court proceedings commenced." Morrison v. City of New York, 591 F.3d 109, 112 (2d Cir. 2010) (internal citations and quotations omitted.) To the extent plaintiff is seeking reconsideration of the state court's retention order keeping him committed at Creedmoor Psychiatric Center, that claim would "invite district court review" of the state court judgment and "rejection of that judgment" and would be barred by Rooker-Feldman.

However, the Court liberally construes plaintiff's complaint as seeking to amend his medical records to remove the "false allegations" which he believes have been "placed before the Court" and have "caus[ed] him to be retained" and may have "be[a]ring on future retention issues." (Am. Compl. at 5, 11.) In addition, plaintiff appears to raise issue with the constitutionality of the state process to amend his mental health records. Plaintiff alleges that he wrote to the Office of Health Information Management, Executive Director Kathleen Iverson, the Office of Mental Health and Forensic Committee and Dr. Falcon to amend his mental health

7

records but did not receive a response to his letter. (Id. at 4, 5, 10, 11.) In addition, plaintiff states "that the notice on the wards by the Office of Health Management states that the correct procedure is to write the Office of health management concerning personnell [sic] files but furthertively [sic] states they do not have to amend anything." (Id. at 5.) Plaintiff asserts that MHLS "refused to appeal or dropped appeal" and that he has no other recourse. (Id. at 5; Pl.'s Third Letter at 6.) "[I]f a plaintiff's claim can reasonably be read as not challenging a state court judgment, Rooker-Feldman is not implicated." Brown v. New York State Supreme Court for Second Judicial Dist., -- F.Supp.3d. --, No. 09 Civ. 0234(BMC)(LB), 2010 WL 274108, 2 (E.D.N.Y. January 26, 2010). Furthermore, "Rooker-Feldman does not apply where a federal claimant seeks only prospective relief from an allegedly unconstitutional state procedure, and 'does not request the district court to interfere in any way' with a prior state decision or with the enforcement of that decision." Walker v. New York, 345 F.Supp.2d 283, 288 (E.D.N.Y. 2004) (quoting Centifanti v. Nix, 865 F.2d 1422, 1430 (3d Cir.1989)). Therefore, defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), on the basis of the Rooker-Feldman doctrine, should be denied.

### III. Failure to state a claim

Plaintiff summarily lists violations of the ADA, 42 U.S.C. §§1985, 1986, HIPAA and Bivens but makes no further reference to these statutes and case law in his amended complaint or in his opposition to the motion. (Am. Compl. at 8.) "Title II of the ADA proscribes discrimination against the disabled regarding access to public services." Edwards v. Brookhaven Science Associates, LLC, 390 F.Supp.2d 225, 234 -235 (E.D.N.Y. 2005) (citing 14 U.S.C. §12132). "Title III of the ADA proscribes discrimination against the disabled in public

8

accommodations." Id. (citing 14 U.S.C. §12182(a)). Plaintiff has offered no facts or arguments that would support a claim against defendants for violations under these acts, therefore defendants' motion to dismiss plaintiff's ADA claim should be granted. See Maccharulo v. Gould, 643 F.Supp.2d 587, 602 (S.D.N.Y. 2009) (the amended complaint fails to allege how any particular defendant engaged in unlawful discriminatory conduct or to reasonably accommodate plaintiff and therefore fails to state a claim under Title II of the ADA); Aquino v. Prudential Life and Cas. Ins. Co., 419 F.Supp.2d 259, 274 (E.D.N.Y. 2005) (dismissing plaintiff's claim under Title III of the ADA as "conclusory," "confused, ambiguous, vague" and "otherwise unintelligible").

Similarly, plaintiff fails to state a claim under 42 U.S.C. §§1985, 1986. Section 1985 permits the recovery of damages against persons who conspire to violate a plaintiff's civil rights. 42 U.S.C. §1985. In order to state a conspiracy claim under 42 U.S.C. §1985(3), a plaintiff must show: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 791 (2d Cir. 2007). Furthermore, a §1986 claim can only be based upon a valid §1985 claim. Brown v. City of Oneonta, New York, 221 F.3d 329, 341 (2d Cir. 2000) (citation omitted). Plaintiff's complaint fails to set forth any facts establishing a conspiracy based on any racial or class based invidious discriminatory animus and therefore, defendants' motion to dismiss plaintiff's §§1985, 1986 claims should be granted. See Dowlah v. Dowlah, No. 09-CV-2020 (SLT), 2010 WL 889292, 8 (E.D.N.Y. March 10, 2010) (dismissing pro se plaintiff's §1985 claims for failing to allege any factual support to establish

that defendants were motivated by racial or class based, invidious discriminatory animus); see also Johnson v. City of New York, 669 F.Supp.2d 444, 451-452 (S.D.N.Y. 2009) ("A bare assertion that a conspiracy existed, unsupported by any specific factual allegations, is itself insufficient to state a plausible claim to relief."); Mass v. McClenahan, 893 F.Supp. 225, 231 (S.D.N.Y. 1995) ("[A] plaintiff must do more than make vague, general or conclusory accusations in order to establish the existence of a conspiracy actionable under §1985(3).")

In addition, as explained by the Court's May 21, 2007 Order, HIPAA does not confer a private right of action that would entitle plaintiff to bring suit to enforce its provisions. (Document 7.) Nor can plaintiff state a claim under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), which provides a right of action for constitutional violations against persons acting under the color of federal law. Defendants herein do not act under the color of federal law. Therefore, the Court should grant defendants' motion to dismiss plaintiff's HIPAA and Bivens claims.

## IV. 42 USC §1983

Section 1983 of Title 42 of the United States Code provides "a method for vindicating federal rights elsewhere conferred," including under the Constitution. Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010) (citing Baker v. McCollan, 443 U.S. 137, 144 n. 3, (1979)). However, to state a claim under 42 U.S.C. §1983, plaintiff must allege that a person, acting under color of state law, has deprived him of a right, privilege, or immunity guaranteed by the Constitution or Laws of the United States. 42 U.S.C. §1983. Plaintiff alleges that defendants Forensic Committee Personnel, Personnel Office of Health Information, Dr. Alicia P. Falcon, MD, Dr.

Kathleen Iverson, MD and the Commissioner of Mental Health violated his rights under the Fourth, Fifth, Eighth, Sixth and Fourteenth Amendments of the United States Constitution.

Plaintiff states that he is suing defendants in both their individual and official capacities. (Am. Compl. at 2.) Defendants argue that "Forensic Committee"[5] and "Office of Health Information" at Creedmoor are "State entities and not subject to suit under §1983." (Defs.' Mem. at 10 citing New York Mental Health Law "NYMHL" §33.16 and 14 NYCRR §541.9.) OMH is a state agency. Makas v. Miraglia, No. 05 Civ. 7180(DAB)(FM), 2007 WL 152092, 13 (S.D.N.Y. January 23, 2007) (citing NYMHL §§ 7.01, 7.07)). The Eleventh Amendment bars suits for damages against states, state agencies, and state officials acting in their official capacity, absent the state's consent to suit or an express or statutory waiver of immunity. Board of Trustees of Univ. of Alabama v. Garrett, 531 U.S. 356, 363 (2001). "[N]either a State nor its officials acting in their official capacities are 'persons' under [42 U.S.C.] §1983." Huminski v. Corsones, 396 F.3d 53, 70 (2d Cir. 2005) (quoting Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989)). Therefore, to the extent plaintiff is suing the Personnel Office of Health Information Management, an office within the Office of Mental Health ("OMH"), or any of the individual defendants in their official capacities for damages, plaintiff's claims are barred. However, liberally construed, the Court also considers plaintiff's claims for damages against defendants in their individual capacities.

In *Ex parte* Young, 209 U.S. 123 (1908), the Supreme Court identified an exception to state sovereign immunity where plaintiff "alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." Dairy Mart Convenience Stores, Inc. v. Nickel, 411 F.3d 367, 372 (2d Cir. 2005). This exception applies when a plaintiff sues a state official in

---

[5] Plaintiff sues "unknown personnel of the Forensic Committee," not the State entity. (Am. Compl. at 2.)

his or her official capacity for prospective injunctive or declaratory relief. In re Deposit Ins. Agency, 482 F.3d 612, 617 (2d Cir. 2007). Moreover, a state official in his or her official capacity, when sued for injunctive relief, would be a person under §1983 because "official-capacity actions for prospective relief are not treated as actions against the State." Will, 491 U.S. at 71 n.10 (citations omitted). Therefore, although the Court should dismiss plaintiff's claims against the "Office of Health Information," plaintiff's claims for injunctive and declaratory relief against defendants Forensic Committee personnel, Falcon, Iverson and Commissioner of Mental Health, in their official capacities, require further consideration.

### A. Fourteenth Amendment

In order to prevail on a §1983 claim for violation of the procedural due process rights guaranteed by the Fourteenth Amendment, the plaintiff must show (1) that he possessed a protected liberty or property interest; and (2) that he was deprived of that interest without due process. Rehman v. State University of New York at Stony Brook, 596 F.Supp.2d 643, 656 (E.D.N.Y. 2009) (citing McMenemy v. City of Rochester, 241 F.3d 279, 285-86 (2d Cir. 2001)). Plaintiff argues he was denied a liberty interest because his medical records, which he believes have kept him committed, are incorrect and states there is no process to correct his records.[6] The Court acknowledges that "[a]n involuntary civil commitment is a 'massive curtailment of liberty,' and it therefore cannot permissibly be accomplished without due process

---

[6] Defendants construe plaintiff's Amended Complaint Pursuant to Remand as alleging that he has a right to have correct medical records and argue that there is no constitutional right to "even see [] medical records." (Defs.' Mem. at 13.) Therefore, defendants argue that plaintiff fails to state a claim under the Fourteenth Amendment. However, plaintiff states that "false allegations have been placed before the court for years without his acknowledgement and the damage has affected his liberty interest by causing him to be retained by Mental Health Court" (Am. Compl. at 5) and "Pecou believes fabrications were utilized to show Pecou is dangerous at present time in order to retain" (Pl.'s Third Letter at 6). In light of these statements and construing plaintiff's pleading to suggest the strongest possible argument, the Court interprets plaintiff's Amended Complaint Pursuant to Remand as arguing both a deprivation of his liberty interest without due process and a right to have correct medical records.

of law. Olivier v. Robert L. Yeager Mental Health Center, 398 F.3d 183, 188 (2d Cir. 2005) (internal citations omitted). However, plaintiff fails to establish that the alleged inaccuracies in his medical records are the basis of his involuntary commitment and that he has been denied due process with regard to his commitment.[7]

"[D]ue process does not permit the involuntary hospitalization of a person who is not a danger either to herself or to others." Id. Defendants correctly point out that plaintiff does not contest his mental illness. (Defs.' Mem. at 11.) In addition, plaintiff does not allege that he was deprived of a hearing to determine whether he was a danger to himself or others. (Id.) The Amended Complaint Pursuant to Remand mentions that retention hearings were held in January, February, July, August, October, and November of 2006. (Am. Compl. at 5.) Instead, plaintiff argues that Judge Earlbaum, based his decision on incorrect medical records and "stopped" plaintiff's release. (Am. Compl. at 5.) Plaintiff offers no proof for this conclusory statement.

New York law provides plaintiff with a means to amend his records. Pursuant to CPL §330.20(17), a defendant, "committed to the custody of the commissioner" and "subject to the limitations of this section," with the "rights granted patients under the [MHL]." MHL §33.16(g) provides that an individual "may challenge the accuracy of information maintained in the clinical record" by providing "a brief written statement . . .[which] shall become a permanent part of the record and shall be released whenever the clinical record at issue is released." On May 2, 2006, plaintiff states he sent a letter to the Forensic Committee and other defendants stating his objections to portions of his medical records and asking that his records be corrected. (Am. Compl. at 4, 10, 11.) While plaintiff alleges that defendants did not respond to his letter (Am. Compl. at 4), the statute does not require a response, just that the letter be included in plaintiff's

---

[7] New York's overall statutory scheme governing involuntary commitment has been upheld as constitutional. Rodriguez v. City of New York, 72 F.3d 1051, 1062 (2d Cir. 1995).

record. Plaintiff does not allege that his letter was not included in the record, as required by state law. The fact that plaintiff is still committed, in light of plaintiff's overall record, which contains numerous references to violent and threatening behavior, does not establish that the letter was not included. Therefore, plaintiff fails to establish that he was denied due process with regard to his clinical record. See Jelich v. Hogan, No. 09 Civ. 3278(BMC), 2009 WL 3497495, 2 (E.D.N.Y. October 27, 2009) ("If the defendant adhered to the procedural requirements of the relevant statutory section, the demands of substantive and procedural due process have been met and no claim under 42 U.S.C. § 1983 has been stated.")

Furthermore, in order to sustain a substantive due process claim, plaintiff must demonstrate "governmental conduct that is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Brown v. Baldwin Union Free School Dist., 603 F.Supp.2d 509, 515 (E.D.N.Y. 2009) (quoting Velez v. Levy, 401 F.3d 75, 93 (2d Cir. 2005) (internal citations and quotations omitted)). Plaintiff's Amended Complaint Pursuant to Remand falls way short of alleging conduct that shocks the conscience. Therefore, defendants' motion to dismiss plaintiff's due process claim under the Fourteenth Amendment should be granted.

### B. Fourth Amendment

As the Court's May 21, 2007 Order stated, "[t]here is no Fourth Amendment violation for involuntary hospitalization, 'if there are reasonable grounds for believing that the person seized is subject to seizure under the governing legal standard.'" (Document 7 at 6-7 (citing Glass v. Mayas, 984 F.2d 55, 58 (2d Cir. 1993)). "An involuntary hospitalization does not violate the Fourth Amendment if it is based upon probable cause, meaning that there are reasonable grounds for believing that the person seized is dangerous to herself or to others." Fisk v. Letterman, 501

F.Supp.2d 505, 526 (S.D.N.Y. 2007). While arguing that there are "fabrications" on his record, plaintiff's Amended Complaint Pursuant to Remand also acknowledges that "there is violence on his record" and that he is "sincerely sorry for the events." (Am. Compl. at 4, 10, 11.) Therefore, on this record, defendants' motion to dismiss plaintiff's Fourth Amendment claim should be granted.

### C. Fifth, Sixth and Eighth Amendments

The Eighth Amendment applies only to imprisonment pursuant to a criminal conviction. Warheit v. City of New York, No. 02 Civ. 7345(PAC), 2006 WL 2381871 at 11 (S.D.N.Y. August 15, 2006) (citing DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 199 (1989) ("[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law.")); see also Katzman v. Khan, 67 F.Supp.2d 103, 111 (E.D.N.Y. 1999) ("The Eighth Amendment protects those convicted of crimes against "cruel and unusual punishment," and applies only after conviction.") Therefore, "[t]he involuntary commitment of mentally ill individuals does not constitute punishment for purposes of the Eighth Amendment." Warheit, 2006 WL 2381871 at 11.

Similarly, the Sixth Amendment, by its terms, applies only to criminal proceedings. U.S. CONST. amend. VI. "Because the state court proceedings at issue here were not criminal proceedings, [plaintiff's] . . . Sixth Amendment claim[] lack[s] merit and must be dismissed. Fisk v. Letterman, 501 F.Supp.2d 505, 521 (S.D.N.Y. 2007). As to plaintiff's claim that defendants violated his Fifth Amendment rights, "the Fifth Amendment Due Process Clause limits federal actions." Goldberg v. UBS, – F.Supp.2d.--, 2010 WL 744586, 14 (E.D.N.Y.

March 5, 2010). Plaintiff's suit is against state defendants. Therefore defendants' motion to dismiss plaintiff's Fifth, Sixth and Eighth Amendment claims should be granted.[8]

## V. STATE LAW CLAIMS

Finally, the Court should decline to exercise supplemental jurisdiction on plaintiff's state law claims against defendants since the Court recommends granting defendants' motion to dismiss on all of plaintiff's federal law claims. Valencia v. Lee, 316 F.3d 299, 305 (2d Cir. 2003) (citing 28 U.S.C. §1367(c)(3)).

## CONCLUSION

Accordingly, defendants' motion to dismiss should be granted.[9]

---

[8] As plaintiff fails to state a claim that defendants violated his constitutional rights, the Court need not address the parties' arguments regarding personal involvement, supervisory liability and qualified immunity.

[9] Plaintiff alleges that "to dismiss this case without a trial by jury and judge would constitute an injustice." (Pl.'s Second Letter at 3.) Defendants argue that plaintiff fails to understand his burden, has been "afforded ample opportunity to state a cognizable claim" and that "plaintiff's allegations remain conclusory and unspecific." (Reply Mem. at 3.) Plaintiff was given the opportunity to amend his complaint to allege "plausible" facts that would "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 556)). Since plaintiff's amended complaint fails to state a claim, defendants' motion to dismiss should be granted.

# FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. §636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physician's Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Services, 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

LOIS BLOOM
United States Magistrate Judge

Dated: May 13, 2010
　　　　Brooklyn, New York